UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

HELEN D. WILLIAMS                                                              PLAINTIFF

v.                                                      CIVIL ACTION NO. 3:13cv439-DPJ-FKB

U.S. BANK NATIONAL ASSOCIATION,                                              DEFENDANTS
as Trustee, Successor in Interest to Bank of
America, N.A., as Trustee, as Successor
by Merger to LaSalle Bank National
Association, as Trustee for Certificate
Holders of Bear Sterns Asset Backed
Securities I LLC Asset-Backed Certificates,
Series 2005-HE4, et al.

ORDER

This removed case is before the Court on Plaintiff's Motion to Remand [8], Defendants

U.S. Bank and EMC Mortgage's Motions to Refer [6] and to Dismiss [10], and Defendant Britt

Barnes Realty Group's Motion to Dismiss [34].  Having fully considered the premises, the Court

concludes that nondiverse defendant Britt Barnes Realty was improperly joined.  Britt Barnes is

therefore dismissed and Williams's motion to remand must be denied.  The motion to refer is

denied, and the motion to dismiss is granted in part but otherwise denied as set forth below.

I.       Facts and Procedural History

This case concerns real property located at 1234 New Mount Calvary Road in Lake,

Mississippi.  Plaintiff Helen D. Williams and her husband, Marvin Williams, acquired the

property in 1973.  In 2004, the Williamses executed a deed of trust on the property to secure a

$40,000 loan made to Marvin Williams.  Following Marvin Williams's death in 2007, Helen

Williams asserts that she "was unable to make payments [on the loan] because the servicer

refused to discuss any account matters with her."  Compl. [1-1] ¶ 16.  Specifically, Williams

states that "she was advised by [Defendant] EMC Mortgage Corporation, . . . the former loan servicer, that her payments would not be accepted due to the fact that she wasn't listed on the 'account.'" *Id.* ¶ 17.

"In order to save her home" from foreclosure, Williams filed a voluntary chapter 13 bankruptcy in January 2009. *Id.* ¶ 18. Although Williams was "under the impression that her mortgage had been included in the Petition," the property was not listed as an asset of her estate in that proceeding. *Id.* The 2009 bankruptcy case was ultimately dismissed on November 10, 2011.

At some unspecified time, Williams "requested and applied for a loan modification from her servicer," EMC. *Id.* ¶ 21. Williams says that EMC advised her that no foreclosure proceedings would occur during the modification-application process. *Id.* ¶ 65. When she contacted EMC to inquire as to the status of the modification application, EMC "denied having any information regarding a request for a modification." *Id.* ¶ 22.

In April 2012, the deed of trust securing Marvin Williams's loan was assigned to Defendant U.S. Bank, who named Nationwide Trustee Services, Inc., as substitute trustee. On May 1, 2012, Williams filed a voluntary petition for relief under chapter 7 of the bankruptcy code. In the chapter 7 case, Williams included the subject property and listed EMC as a creditor. On September 17, 2012, Williams received a no-asset discharge under 11 U.S.C. § 727(a).

At some point in late 2012 or early 2013, Williams received from U.S. Bank a notice of foreclosure sale to take place on January 16, 2013. Williams subsequently received a second notice of foreclosure sale, setting the sale for February 20, 2013. Williams's sons and her neighbor appeared at the Scott County Courthouse on the date of the scheduled foreclosure sale

and, according to Williams, "[n]o 'public outcry' for the sale of th[e] property occurred."

Compl. [1-1] ¶ 31.  Nevertheless, a substitute trustee's deed was recorded on February 21, 2013,

stating that U.S. Bank purchased the property at a public auction on February 20, 2013.

Thereafter, Britt Barnes Realty, a local real-estate agent, contacted Williams and,

according the allegations in the Complaint, "threaten[ed] her that she had to leave her home."  *Id.*

¶ 35.  Williams asserts that "eviction proceedings were instituted against" her.  *Id.*

On June 11, 2013, Williams filed her complaint in the Circuit Court of Scott County,

Mississippi, against U.S. Bank, EMC, Britt Barnes Realty, and Shavonne Clark in her capacity as

Assistance Vice President of Nationwide Trustee Services.  EMC and U.S. Bank removed the

case to this Court on July 11, 2013, asserting federal-question, diversity, and bankruptcy

jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1334.  Defendants then moved to refer the case

to bankruptcy court [6], Plaintiff moved to remand [8], and Defendants moved to dismiss [10,

34].  In the meantime, Defendants also filed a motion to reopen Williams's chapter 7 bankruptcy,

and United States Bankruptcy Judge Neil P. Olack granted that motion on November 5, 2013.

Judge Olack concluded that two of Williams's negligence-based claims are the property of her

bankruptcy estate.  In this case, the parties engaged in a protracted period of remand-related

discovery.  The matters raised in the pending motions have now been fully briefed, and the Court

is prepared to rule.

II.     Analysis

A.      Motions to Remand and to Refer

"[D]efendants may remove a civil action if a federal court would have had original

jurisdiction."  *DeAguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).  Defendants, as the

removing party, "bear[] the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted).

In this case, Defendants premise federal jurisdiction on multiple alternative grounds. They assert that Williams's reliance on certain consent orders entered by the Office of the Comptroller of the Currency of the United States gives rise to federal-question jurisdiction. They argue that Britt Barnes Realty, the sole nondiverse defendant, was improperly joined to defeat diversity jurisdiction. And they allege that the claims asserted herein are the property of Williams's bankruptcy estate, giving the Court bankruptcy jurisdiction over the case. Because both diversity and bankruptcy jurisdiction exist, the Court will not address whether the consent orders created a federal question.

1.      Diversity Jurisdiction

District courts have jurisdiction over civil actions between "citizens of different States." 28 U.S.C. § 1332(a)(1). The diversity statute requires complete diversity between all named plaintiffs and all named defendants. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005). "[A] narrow exception to the rule" exists, however, where the nondiverse defendant was improperly joined. *Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003). "The burden of demonstrating improper joinder is a heavy one and is placed upon the party seeking removal." *Lorenz v. Tex. Workforce Comm'n*, 211 F. App'x 242, 245 (5th Cir. 2006) (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)). The test for improper joinder is "whether there is any reasonable basis for predicting the plaintiff[] might be able to recover against . . . the in-state defendant." *Jones v. Gen. Motors Corp.*, No. 3:06cv608–DPJ–JCS, 2007

WL 1610478, at *1 (S.D. Miss. June 1, 2007) (quoting *Love v. Ford Motor Co.*, 212 F. App'x

292, 294 (5th Cir. 2006)).

A district court should ordinarily resolve an improper joinder claim by conducting a Rule

12(b)(6)-type analysis. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). The

Court "must then evaluate all of the factual allegations in the light most favorable to the plaintiff,

resolving all contested issues of substantive fact in favor of the plaintiff." *B., Inc. v. Miller*

*Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). Similarly, the Court must resolve all

ambiguities in controlling state law in the plaintiff's favor. *Travis v. Irby*, 326 F.3d 644, 648 (5th

Cir. 2003) (citations omitted). Finally, "there are cases, hopefully few in number, in which the

plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the

propriety of joinder." *Smallwood*, 385 F.3d at 573. In such cases, the district court has the

discretion to "pierce the pleadings" and conduct a summary inquiry. *Id.* Such is the case now

before the Court.

Defendants assert that Britt Barnes Realty, the nondiverse defendant, was improperly

joined to defeat diversity jurisdiction.[1] Before proceeding further, it is necessary to frame the

claims. Williams's complaint against Britt Barnes Realty is limited to a claim for negligent

infliction of emotional distress ("NIED"). But in her averments, Williams uses language more

commonly understood as invoking intentional infliction of emotional distress ("IIED"). "A

court must look to the content of the pleading to determine the nature of the action. Substance is

---

[1]Plaintiff asserts, and no defendant disputes, that Britt Barnes Realty is a Mississippi LLC
whose sole registered member is a Mississippi resident. Compl. [1-1] ¶ 5. Britt Barnes Realty is
therefore deemed to be a citizen of Mississippi for purposes of diversity jurisdiction. *Harvey v.
Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079–80 (5th Cir. 2008).

considered over form. . . . The label is not controlling." *Am. Bankers Ins. Co. of Fla. v. Booth*,

830 So. 2d 1205, 1214 (internal quotation marks and citation omitted). In this case, both parties

brief the improper-joinder issue under both the NIED and IIED theories, so the Court will do the

same.

a.      NIED

The standard for establishing a claim for NIED in Mississippi has never been fully

settled. The primary dispute is whether a plaintiff must show an injury or some manifestation of

harm. *See Edmonds v. Beneficial Miss., Inc.*, 212 F. App'x 334, 337 (5th Cir. 2007)

("Mississippi law is unclear as to whether a physical manifestation of harm is required for

negligent infliction of emotional distress cases."). But because this matter is before the Court on

a motion to remand, the Court must construe all ambiguities in favor of the party resisting federal

jurisdiction. *Travis*, 326 F.3d at 648. Accordingly, the Court will apply the most permissive

articulation of the law.

"Generally, 'meeting the requisites of a claim for . . . infliction of emotional distress is a

tall order in Mississippi.'" *Riley v. F.A. Richard & Assocs., Inc.*, 16 So. 3d 708, 719 (Miss. Ct.

App. 2009) (quoting *Speed v. Scott*, 787 So.2d 626, 630 (Miss. 2001)).

> Where, as here, the defendant's conduct amounts to simple negligence, we take
> this opportunity to clarify that we have moved away from the requirement of
> proving some physical injury in addition to the proof of reasonable foreseeability.
> Our language in the previously cited cases, adopting the term "demonstrable
> harm" in place of "physical injury," indicates that the proof may solely consist of
> evidence of a mental injury without physical manifestation.

*Adams v. U.S. Homecrafters, Inc.*, 744 So. 2d 736, 743 (Miss. 1999). "Even under the

permissive standard, . . . plaintiffs must still 'prove some sort of injury, whether it be physical or

6

mental.'" *Edmonds*, 212 F. App'x at 337 (citing *Ill. Cent. R.R. Co. v. Hawkins*, 830 So. 2d 1162,

1174 (Miss. 2002)). And she must do so with "'substantial proof' of emotional harm." *Id.*

In the present case, Williams explained her claimed emotional distress in her deposition,

testifying that she had lost sleep, "was very distressed," and "was extremely worried." Williams

Dep. [29-14] 30–31. While the Court does not wish to minimize Williams's feelings, courts

interpreting Mississippi law have uniformly held that such complaints are not sufficient to state a

claim for NIED even under the permissive standard that is sometimes applied. *Edmonds*, 212 F.

App'x at 337; *see also Evans v. Miss. Dep't of Human Servs.*, 36 So. 3d 463, 476 (Miss. Ct. App.

2010) (noting that Mississippi Supreme Court consistently holds that "sleeplessness, nightmares

and even multiple visits to a medical doctor [are] insufficient proof of emotional harm") (citation

omitted).

Williams also stated that she was taking high-blood-pressure medication and Xanax for a

nervous stomach. Several cases have held that high blood pressure is not substantial proof of

emotional distress. *See, e.g.*, *Edmonds*, 212 F. App'x at 337–38 (affirming directed verdict on

NIED claim despite elevated blood pressure). It is not entirely clear, however, whether these

cases turn on a lack of proof or lack of evidence linking the elevated blood pressure to the alleged

negligence. *See id.* at 338 ("[A]llegations regarding his blood pressure[] do not reach the level of

the 'substantial proof' of emotional harm that Mississippi law requires for claims of emotional

distress, including those analyzed under the permissive view."); *Montgomery v. CitiMortgage,

Inc.*, 955 F. Supp. 2d 640, 654 (S.D. Miss. 2013) (noting that doctor did not specifically link high

blood pressure to events); *Randolph v. Lambert*, 926 So. 2d 941, 946 (Miss. Ct. App. 2006)

(noting failure of proof linking high blood pressure to the defendant's alleged acts). Assuming

prescriptions for high-blood-pressure medication and Xanax would be sufficient proof, Williams

has not linked those medications to the nondiverse defendant.  In her deposition, Williams

testified that the high blood pressure was ongoing from 2012, the year before Brett Barnes Realty

was involved in her case.  She then testified that she could not recall how long she had been

taking Xanax for her nervous stomach, but indicated that it may have also been in 2012.

Williams Dep. [29-14] 33–35.  Williams has not established substantial proof of emotional harm.

> b.       IIED

"Where there is no physical injury, a party may recover for intentional infliction of

emotional distress, 'where there is something about the defendant's conduct which evokes

outrage or revulsion.'"  *Franklin Collection Serv., Inc. v. Kyle*, 955 So. 2d 284, 290–91 (Miss.

2007) (quoting *Morrison v. Means*, 680 So. 2d 803, 806 (Miss. 1996)).  "The standard is whether

the defendant's behavior is malicious, intentional, willful, wanton, grossly careless, indifferent or

reckless.'"  *Id.* (quoting *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss.

1995) (other citations omitted).

Williams claims that Brett Barnes Realty's conduct was sufficiently egregious to state a

claim for IIED.  She argues in her initial memorandum that "Britt Barnes Realty Group

threatened Plaintiff to get her to leave her home, telling her that she no longer owned her home,

despite the fact that no foreclosure sale occurred as required by Mississippi law."  Pl.'s Mem. [9]

at 10 (citing Compl. ¶ 35); *see also* Pl.'s Reply [52] at 12 (citing Compl. ¶ 35).  She further avers

"that after she initially refused to leave her home because the Substitute Trustee's Deed was filed

fraudulently, the Defendant Barnes employee [Tim Latham] continued contacting her and

pressuring her to leave the property."  Pl.'s Reply [52] at 12 (citing Compl. ¶ 35).

It is debatable whether these averments are sufficient.  Regardless, the matter is now before the Court for summary review, and Williams's deposition testimony tells a far different story.  To begin, it appears that Williams did not inform Latham that there were issues with the foreclosure.  *See* Williams Dep. [29-14] 15–16.  She also confirmed that Latham "was not rude," and she assumed he was "just doing his job."  *Id.* at 14.  She further agreed that the contact was "cordial."  *Id.* at 16.  When asked to describe why she found it harassing, she made clear that it was simply the fact that someone was asking her to leave her home.  *Id.*  She agreed that Latham's actions on behalf of Brett Barnes Realty "weren't in any way intimidating" and "[i]t was just the fact of the situation."  *Id.*  Finally, Williams acknowledged that Latham offered her a small sum to help relocate in an effort to avoid the impasse.  *Id.* at 17.  In sum, the undisputed evidence indicates that Brett Barnes Realty and its employee Tim Latham were asked to assist in the eviction, and there is no indication that they were aware of any issues with the recorded foreclosure.  Their efforts with respect to Williams were, by her own admission, "cordial."  There is no reasonable basis for predicting that this conduct could possibly state a claim under Mississippi law.[2]

        2.        Bankruptcy Jurisdiction and Referral

After Judge Olack reopened her chapter 7 bankruptcy case, Williams essentially conceded that bankruptcy jurisdiction exists.  She maintained, however, that the Court should abstain.

---

[2]At one point Williams argued that Brett Barnes Realty was an agent for Chase or EMC and was therefore on notice of the alleged defects in the foreclosure.  Even if that theory were valid, it was made before remand-related discovery, after which Williams took the position that Brett Barnes Realty was not an agent for Chase or EMC.  *See* Pl.'s Reply [52] at 15.

That option has now been removed due to the presence of diversity jurisdiction.  So the sole

remaining question is whether to refer the case to the bankruptcy court.

Defendants correctly point out that, in July 23, 1983, a Standing Nunc Pro Tunc Referral

of Bankruptcy Matters to Bankruptcy Judges was entered in this district.  That order provided

that "any and all proceedings . . . arising in or related to a case under Title 11 . . . hereby are

referred to the Bankruptcy Judges for the Southern District of Mississippi for consideration and

resolution consistent with the law."  The continued validity of that order is in question in light of

the December 7, 2011 Order purporting to vacate all standing orders, but which failed to

specifically reference the bankruptcy referral order.  The situation is complicated by the cloud of

uncertainty regarding the constitutional limits on the bankruptcy court's jurisdiction raised in

*Stern v. Marshall*, 131 S. Ct. 2594 (2011).  Even under the statute providing for referral, it

appears that the most the bankruptcy court could do—at least as to Williams's claims that are not

related to her bankruptcy—would be to enter proposed findings of fact and conclusions of law

for this Court's consideration.  *See* 28 U.S.C. § 157(c).  In light of the length of time that the case

has already languished on the undersigned's docket without progressing, referral for proposed

findings of fact seems an inefficient course.  The motion to refer is therefore denied.

B.      Motion to Dismiss

U.S. Bank and EMC moved under Rule 12(b)(6) to dismiss the Complaint against them

in its entirety, with prejudice.[3]  In considering a motion under Rule 12(b)(6), the "court accepts

'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin*

*K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting

---

[3]The final defendant, Shavonne Clark, has not made an appearance to date.

*Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  But "the tenet that a court must accept

as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007)).  To overcome a Rule 12(b)(6) motion, a plaintiff must

plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at

570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on

the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at

555 (citations and footnote omitted).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> 1.      Judicial Estoppel

Defendants first assert that Williams's claims are barred by the doctrine of judicial

estoppel.  Judicial estoppel is "a common law doctrine by which a party who has assumed one

position in his pleadings may be estopped from assuming an inconsistent position." *Brandon v.*

*Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988) (footnote and citations omitted).

> A court should apply judicial estoppel if (1) the position of the party against
> which estoppel is sought is plainly inconsistent with its prior legal position; (2)
> the party against which estoppel is sought convinced a court to accept the prior
> position; and (3) the party did not act inadvertently.

*Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (citation omitted).  The

Fifth Circuit has explained that judicial estoppel is "particularly appropriate where . . . a party

fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal

based on that undisclosed asset." *Id.*  Finally, "[b]ecause judicial estoppel is an equitable

doctrine, courts may apply it flexibly to achieve substantial justice." *Reed v. City of Arlington*,

650 F.3d 571, 576 (5th Cir. 2011) (citations omitted).

Defendants assert that—at least as to the two claims Judge Olack concluded are assets of

the estate—the test for judicial estoppel is met.  Williams counters that Defendants fail to show

the omission was not inadvertent, especially considering Judge Olack's somewhat equivocal

conclusion that the claims "*likely* accrued pre-petition."  Order [53-4] at 15 (emphasis added).

Moreover, Williams points out, her bankruptcy has been reopened so that the estate may recover

on the disputed claims if she is successful.  *Cf. Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380,

387 (5th Cir. 2008) (refusing to apply judicial estoppel to bar trustee from pursuing claim on

behalf of estate where debtor failed to disclose lawsuit in bankruptcy schedules but trustee had

bankruptcy case reopened to pursue claims on behalf of estate).

The Court notes that the case is before it on a Rule 12(b)(6) motion for failure to state a

claim.  And while "dismissal under Rule 12(b)(6) may be appropriate" where "a successful

affirmative defense appears on the face of the pleadings," Defendants have not at this stage

established judicial estoppel as to the two bankruptcy-estate claims.  *Kansa Reinsurance Co.,*

*Ltd. v. Congr. Mort. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994) (citation omitted).  This

ruling is without prejudice to Defendants' right to raise the defense on a more complete record.

> 2.      Failure to State a Claim

> > a.      Contract-based Claims

Defendants assert that Williams's contract-based claims fail because "she was not an

obligor on the mortgage loan."  Defs.' Mem. [11] at 9 (citing *Kiper v. BAC Home Loans*

12

*Servicing, LP*, 884 F. Supp. 2d 561 (S.D. Tex. 2012)).  Defendants are correct that Williams was

not a party to the note, but they overlook the fact that Williams was a party to the Deed of Trust.

Deed of Trust [6-3].  And Williams claims that Defendants breached paragraph 22 of the Deed of

Trust by, among other things, failing to provide the required notice of acceleration.  In this

respect, the case is distinguishable from *Kiper*, where the plaintiff was "not a party to the Note,

Deed of Trust or Loan Modification Agreement."  884 F. Supp. 2d at 575.  Williams has stated

facially plausible contract-based claims, and the motion to dismiss is denied as to those claims.

> b.      Fraud

Defendants argue that Williams failed to plead her fraud claim with the requisite

particularity under Federal Rule of Civil Procedure 9(b).  In her response, Williams clarifies the

basis for her fraud claim: "Defendants falsely represented to Plaintiff that her home was sold on

February 20, 2013, fraudulently recorded an invalid Substitute Trustee's Deed, and thereby

attempted to force Plaintiff to leave her home."  Pl.'s Mem. [53] at 12.  In particular, Williams

asserts that the actionable misrepresentation—that a lawful foreclosure sale had taken

place—appeared in the Substitute Trustee's Deed.  Defendants argue that, in view of her

allegation that she knew no foreclosure sale had taken place, Williams cannot establish her

ignorance of the alleged misrepresentation's falsity or reasonable reliance thereon.  *See Crowley*

*v. Adams & Edens, P.A.*, 731 F. Supp. 2d 628, 635 (S.D. Miss. 2010) (listing elements of fraud

claim).  The Court agrees that Williams's allegations in this regard do not state a facially

plausible fraud claim.  Given her knowledge of the falsity of the statement in the Substitute

Trustee's Deed, Williams's fraud claim is subject to dismissal.

c.      Negligence

Defendants assert that Williams's negligence claims fail for lack of a cognizable legal

duty because she was not a party to the note.  But as explained above, Williams was a party to the

Deed of Trust, thereby creating a contractual relationship between the parties that would give rise

to a duty of care.  The motion to dismiss is denied as to the negligence claims.

d.      NIED

For the same reasons the negligent-infliction-of-emotional-distress claim fails against

Britt Barnes Realty, the claim fails as to U.S. Bank and EMC.  The motion to dismiss is granted

on this claim.

e.      Wrongful Foreclosure

Defendants assert that Williams cannot succeed on her wrongful-foreclosure claim

because, at the time of the foreclosure, the underlying loan was in default.  But Williams asserts

that the foreclosure was wrongful in that Defendants failed to comply with several Mississippi

statutes governing foreclosure sales.  Pl.'s Resp. [53] at 16.  As other courts in this district have

recognized, Mississippi law appears to permit a claim for wrongful foreclosure based on

"shortcomings in the foreclosure process."  *Teeuwissen v. JP Morgan Chase Bank, N.A.*, 902 F.

Supp. 2d 826, 835 (S.D. Miss. 2011) (Lee, J.) (citing *Stewart v. GMAC Mortgage, LLC*, No.

2:10cv149-DCB-JMR, 2011 WL 1296887 (S.D. Miss. Mar 31, 2011); *West v. Nationwide*

*Trustee Servs., Inc.*, No. 1:09cv295-LG-RHW, 2009 WL 4738171 (S.D. Miss. Dec. 4, 2009));

*see also Chase Home Fin., L.L.C. v. Hobson*, 81 So. 3d 1097, 1101 (Miss. 2012) ("If Chase

conducted the sale without statutory authority, then the foreclosure sale was void.").  Williams

has stated a facially plausible wrongful-foreclosure claim.

14

f.      Fraudulent Conveyance

Defendants construe Williams's fraudulent-conveyance claim as invoking Mississippi's "statutes invalidating fraudulent conveyances [that] are designed to prevent debtors from putting their property which is available for the payment of their debts beyond the reach of creditors." Defs.' Mem. [11] at 16 (citing *Barbee v. Pigott*, 507 So. 2d 77, 84 (Miss. 1987)).  But as Williams's response makes clear, the fraudulent-conveyance claim is actually an offshoot of her wrongful-foreclosure claim, seeking to have the foreclosure sale set aside.  *See Nat'l Mortg. Co. v. Williams*, 357 So. 2d 934, 936 (Miss. 1978) (explaining that a mortgagor who establishes a wrongful foreclosure "has the right to elect between (1) having the sale set aside and (2) recovering from the mortgagee the damages suffered as a result of the wrongful foreclosure"). As so clarified, the fraudulent-conveyance claim states a facially plausible claim to have the foreclosure sale set aside.

g.      Unjust Enrichment

Finally, Defendants state that the facts alleged by Williams do not state a claim for unjust enrichment.  "Unjust enrichment applies in situations where no legal contract exists, and the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received."  *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583, 588 (Miss. 2012) (footnote and citation omitted). Because there is a "legally binding, written contract[]" between Williams and Defendants, she cannot succeed on a theory of unjust enrichment.  *Garziano v. La. Log Home Co., Inc.*, No. 1:11cv393-LG-JMR, 2012 WL 1998851, at *5 (S.D. Miss. June 4, 2012).

III.      Conclusion

The Court has considered all of the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Plaintiff's Motion to Remand [8] is denied, and Britt Barnes Realty Group's Motion to Dismiss [34] is granted.  Defendants' Motion to Refer [6] is denied, and their motion to dismiss [10] is granted in part as to the claims for fraud, negligent infliction of emotional distress, and unjust enrichment.  The motion is otherwise denied.  The parties are instructed to contact the magistrate judge within ten days of the entry of this order to set the case for a case management conference.

**SO ORDERED AND ADJUDGED** this the 4th day of March, 2014.

s/ <i>Daniel P. Jordan III</i>           <br>
UNITED STATES DISTRICT JUDGE